DAVID T. GOSS, *Appellant.*

*vs.*

JOHN LESTER and FRANCIS B. WEBSTER, *Appellees.*

APPEAL FROM THE WINNEBAGO CIRCUIT COURT.

When A has a lien upon two funds, and B has also a lien upon one of the funds, equity will require A to seek his satisfaction, so far as it goes, out of that fund on which B has no lien.

And this, though one of the securities of A may consist of personalty, and the other of realty.

The complainant below filed his bill against the defendants in the Winnebago Circuit. One of the defendants answered, confessing all the material allegations of the bill. The other defendant filed a general demurrer. The Circuit Court sustained the demurrer, from which decree the complainant appealed.

The statement of the bill, and the points of counsel, are fully stated in the opinion of the court.

*Hand & Ketchum* for the appellant.

*Collins & Smith* for the appellee.

*By the Court,* SMITH, J. This is an appeal from the decree of the Circuit Court of Winnebago County.

The bill in this case was filed the 16th day of December, A. D. 1852, in the said Circuit Court, and sets forth, that on the 14th day of July, 1849, John Lester, one of the defendants, borrowed of Francis B. Webster, the other defendant, $100.00, payable in one year, with interest at the rate of six per cent. per month, and gave his note for the same; and to

June Term, 1853.

Goss
vs.
Lester and
Webster.

secure the payment of said note, Lester gave to Webster a mortgage on the west half of the south-west quarter of section 32, town 20, range 16, in the county of Winnebago.

That afterwards, and about the month of November, 1849, the said John Lester held by contract of purchase from one John Fitzgerald, the south-east quarter of section 31, town 20, range 19, in said county, but said Lester had paid no part of the purchase money for the same; that said Lester, about that time, borrowed another $100 of said Webster, and assigned said contract as security.

In the month of February, 1850, Webster paid to Fitzgerald the purchase money for said last mentioned tract, and took a deed for the same.

About the 5th day of November, 1849, the complainant, Goss, loaned to said Lester, $500, at 50 per cent. per annum, and took his two notes of $250 each for the same; to secure the payment of which Lester gave to Goss a mortgage on the south-east quarter of section 31, town 20, range 16, and the west half of the south-east quarter of section 32, town 20, range 16, and also the west half of the north-west quarter of section —, town 19, range 16. That the whole of said sum and interest is due; that no proceedings at law have been had; and that the west half of the south-east quarter of section 32 is the same land previously mortgaged to Webster, to secure the payment of the said $100 and interest. That the south-east quarter of section 31 is the same land which Lester held by contract from Fitzgerald, and which contract Lester had assigned over to Webster as security, as aforesaid. That Lester, at the time of making the mortgage to Goss, had not legal title to the said west

half of the north-west quarter of section 5, town 19,
range 16 ; that Lester held it by contract which, not
having been complied with, had become null and void.

On or about the 8th day of July, 1850, Webster,
by false and fraudulent representations that some one
from Indiana, was in Oshkosh, and about to attach
Lester's property, induced him to give to him, Web-
ster, a chattel mortgage to secure the payment of one
thousand dollars, but without consideration in fact,
upon 300 saw logs, 50,000 shingles, the undivided
half of a raft of square timber, 10 cows, 10 head of
young cattle, and 50 sheep.

About the month of December, 1850, Webster, by
similar false representation, induced Lester to make a
note to him for $250, without any valuable consider-
ation, and to secure the same by a chattel mortgage
on a threshing machine, the property of Lester, worth
some three hundred and fifty dollars or more. The bill
alleges that these representations were wholly false,
and designed to operate upon the fears of Lester, and
to enable the defendant, Webster, to get into his hands
all of the property of Lester.

The bill further alleges, that in April, 1851, Lester
was possessed of 400 good pine saw logs, worth at least
$400, and at Webster's request, he let him [Webster]
have the logs ; that it was agreed that Webster should
get the logs sawed into lumber, and to sell and dis-
pose of the same, and to account to Lester for one
half of the proceeds of such lumber, and to apply the
amount on the indebtedness of Lester ; that Webster
had the logs sawed into lumber, sold the same, and
converted the whole proceeds to his own use, and re-
fused to account to Lester or to apply the same on his
indebtedness.

June Term, 1853.

Goss
vs.
Lester and
Webster.

The bill further states, that about the 1st day of May, 1851, the said Webster fraudulently and falsely, and with intent to keep and retain in his hands all the property of Lester, represented to him, that the complainant was about to attach the property of Lester, and as he was owing him, Webster, some small demands, he induced Lester, by such representations, to renew the chattel mortgage for $1,000, of the date of July, 1850, which was then about to expire. That such representations were wholly false, and designed to injure and defraud the said Lester and the complainant.

That a few days afterwards, the said Webster went to Lester, and proposed to him, that if the complainant would pay to him, Webster, six hundred dollars, he would deed to him, the complainant, the said south-east quarter of section 31, and would also relinquish to Lester his mortgage on the said west half of the south-west quarter of section 32. That Lester informed the complainant of this proposition, and soon after the complainant and Webster met, and had a conversation together upon the subject, in which Webster proposed that the complainant should pay him $772 ; to which proposition the complainant assented, in case it would be agreed to by Lester. That thereupon Webster went to Lester, and told him that he and the complainant had arranged matters between them, and told him that the complainant had agreed to pay him, Webster, $772, and that Lester was to deed the said 80 acres in the south-west quarter of section 32 to him, Webster, and that he, Webster, was to deed it to the complainant, and that it was the complainant's wish that the conveyances should be so made. That said representa-

tions to Lester, as to the conveyances, were false; that the complainant made no such request, but that the story was contrived by Webster, with the de- sign of obtaining a deed of the said 80 acres of land from Lester, without any intention on the part of Webster, to convey the same to the complainant. That Lester, relying upon the representations of Webster, deeded the said 80 acres to him. That the only object of Lester was to effect, in some way, satisfactory to all the parties, a final settlement of his indebtedness to Webster. That Webster told him, that the complainant would give Lester two years to pay him, the complainant, and that all the mortgages were to be given up to the said Lester. That after Webster had obtained the deed from Lester, as aforesaid, he pretended to Lester that he and the complainant could not agree, that he retained the deed, and refused to cancel the mortgages of Lester, and refused to close up the agreement with the complainant. That after such refusals, Lester became alarmed, and demanded of Webster that he should give up the deed aforesaid. That Webster refused for some time, but at length proposed to the said Lester, to give him back the deed to the said 80 acres of land, provided Lester would give him a mortgage on the same for $600. That Lester, thinking he could do no better, consented, and gave to Webster a mortgage on the said land for $600, which Webster still holds. That said deed and mortgage were obtained by Webster, of the said Lester, by fraud, circumvention and deceit, and were without any valuable consideration whatever.

That the amount paid by Webster to Fitzgerald, as the purchase money of the land mentioned in the

contract before described, was about $235; that the amount borrowed by Lester, of Webster, was about $200, and that the whole indebtedness of the said Lester, to Webster, does not exceed $200.

The bill further states, that the property cover- by the complainant's mortgage is not sufficient in amount and value, to pay off prior incumbrances, and then satisfy the complainant's claim. That Webster's claim ought to be referred to a commissioner to as- certain its amount, and that said Lester's property, on which the complainant has no lien, and on which Webster has a lien, ought to be sold to pay Webster's debt, and out of the residue or remainder, after satisfying Webster's debt, the complainant's debt ought to be paid.

The bill prays that an account may be taken of the amount due to Webster from Lester; that the property of Lester, on which the said Webster has a lien, but upon which the complainant has no lien, may be first applied to the payment of said Webster's debt, and that after the same shall be satisfied, the complainant may have a decree of foreclosure upon the land described in his mortgage, and that the same may be sold to pay his said debt, and for general relief.

On the 29th of December, 1851, the defendant Webster filed a general demurrer to the bill, and on the 30th December, the defendant, Lester, filed his answer admitting all the material allegations of the bill. At a special term of the Winnebago Circuit Court the cause was heard upon the demurrer, which was sustained, and the bill was dismissed, as to Web- ster, from which decree the complainant appealed.

We have been able to cull out, from an immense

June Term, 1853.

Goss
vs.
Lester and
Webster.

amount of trash and scandal, the foregoing synopsis of the bill of complaint filed in this cause.

The bill is inartificially drawn, and it has been a task of some difficulty to sift its merits, and weigh them with patience. Were its faults justly attribut. able to inexperience or ignorance, they would be passed over in silence. But it would seem that the solicitor has sought the immunity of a judicial proceeding for the use of opprobious epithets and disreputable language, which should have no place upon the records of a court of justice, and which ought not to be placed there without rebuke. Had the proper corrective been applied for, it would never, probably, have found its way to this court in its present form. But we do not now feel warranted in rejecting the bill for this cause, and have proceeded to consider its merits.

The case is not without difficulty, though it were stated in the best form. But, after a careful examination of all the matters charged, we think there is sufficient contained in the bill to require the defendant Webster to answer. Chapter 84, section 41, of the Revised Statutes is applicable to this case, and is in the following words: "A defendant shall be required to answer any bill in chancery, where, by law, a bill may now be filed, charging the defendant with being a party to any conveyance or assignment of any estate or interest in land, goods or things in action; or any rents or profits arising therefrom, or to any charge on any such estate, interest, rents or profits, made or created with intent to defraud prior or subsequent purchasers, or to hinder, delay or defraud creditors or other persons, *or when the defend-*

JUNE TERM,
1853

GOSS
VS.
LESTER AND
WEBSTER.

ant shall be charged with any fraud whatever, affecting the rights of property of others."

The defendant, Webster, is charged by the bill with having fraudulently procured a deed from Lester, upon the 80 acres of land covered by the complainant's mortgage, in pretended pursuance of an arrangement with the complainant, by which the complainant would have procured the release of Webster's prior mortgage upon that land ; and with having refused to carry out or make any arrangement to that end, and with having contrived such arrangement solely to get the deed from Lester without any intent of releasing his own mortgage thereon, or of conveying the same to the complainant; and with having held the deed so fraudulently obtained, to compel Lester to give to him another mortgage on the same land for $600, when in fact Lester only owed him about $200. The complainant's right of property in that eighty acres of land, was certainly affected by these fraudulent proceedings so alleged.

Again : The defendant, Webster, is charged with having fraudulently refused to apply the proceeds of the pine saw logs, to the payment of Lester's indebtedness, thereby increasing the amount apparently due from Lester on his mortgage to Webster, to the prejudice of the interest of the complainant in the land as a subsequent mortgagee.

The bill also charges, that Webster holds chattel mortgages on a large amount of personal property, to wit : 300 saw logs, 50,000 shingles, the undivided half of a raft of square timber, 10 cows, 10 young cattle, 50 sheep, a threshing machine, 50 tons of hay, besides his mortgages on real estate, when the debt actually due to him is only about $200 ; and charges also that

these chattel mortgages were procured by false repre- sentations, with the design of sweeping off the whole of the property of Lester, both real and personal. It may be claimed, that, though the representations of Webster to Lester were false and fraudulent, the motive of Lester was also fraudulent as against his creditors, and the parties being in *pari delicto*, chancery will not relieve Lester against the operation of the the personal mortgages so obtained from him; but the creditors of Lester stand in a different attitude, and in their behalf a court of equity delights to disrobe all such transactions of the disguises with which art and cunning have invested them, and to lay bare their real character. The demurrer admits all the material allegations of the bill. They must, therefore, for present purposes, be taken to be true. If they are true, it is certain, that here is not one fraud merely, but a series of fraudulent transactions, persisted in with a degree of diligence and industry, that would be commendable in a better cause.

The material question is, whether the complainant is in a proper condition, in relation to the parties, to seek the aid of a court of equity, and whether his present bill is sufficient in matter and form to enable the court to grant such aid.

It is claimed by the counsel for the defendant, that the complainant had a full and complete remedy at law, by proceeding upon his notes to judgment and execution, and by levying upon the property in Webster's hands. And further, under the statute, he might have made available the attachment clause in an execution, and thereby have garnisheed Webster. (*Revis-ed Statutes, p.* 550, *secs.* 118 *to* 121.

This is indeed true; but it is equally true, in al-

most every instance in which the aid of a court of equity is sought to unmask fraudulent debtors and their accomplices. In cases of alleged fraud, courts of law and equity have a concurrent jurisdiction, and the party may apply to the one or the other, at his option. The remedy provided by the statute is cumulative merely, and by no means divests a court of equity of any of the powers or jurisdiction which it had previous to the enactment of that statute. It is a proceeding *sui generis*, and when conducted according to the provisions prescribed, may answer the purposes for which it was intended. But it cannot be deemed an anequate and complete remedy in all cases of alleged fraudulent transfer or concealment of property by debtors and their accomplices; and the party has still his option to avail himself of the statutory remedy, the usual course of the common law, or the searching scrutiny of a Court of Chancery.

Again : the defendants' counsel contend that the bill in this case is in the nature of a creditor's bill, and that the jurisdiction of a Court of Chancery, of bills of this nature, arises from the fact that the complainant is unable to obtain satisfaction of his judgment, by seizing property under the execution. He must show that he has recovered a judgment, &c.  2 *Barb. Ch. Rep.* 413 ; 8 *Paige*, 130, *and the cases there cited.*

In case of a creditor's bill, strictly and properly so called, the position here assumed is correct. A judgment at law must be first obtained. It is a court of law, asking the aid of a court of equity to enable it to satisfy its own judgment. The object of the bill is to find out *some* property of the defendant on which a levy may be made, or which may be applied to the satisfaction of the judgment, and to obtain discovery

from the defendant and his confederates, of his pro-

perty subject to execution, and of his rights, credits, and choses in action, which ordinary process of execution cannot reach. But such is not the object of this bill. Here the complainant has a specific security for his debt, which he seeks to make available to that end. That security is rendered less available, or unavailable, and less valuable, by the unjust acts of the defendant. He does not seek to discover, and to apply indiscriminately the property of Lester to the payment of his debt; but he seeks, through the aid of the court, to apply the specific property to the payment of his debt, the object for which it was mortgaged. The distinction is therefore obvious between the bill filed in this case, and a creditor's bill.

If Webster's debt were wholly paid, and the mortgage remained wholly unsatisfied, no one will deny but the complainant might ask to have it cancelled, and the property applied to the satisfaction of his mortgage. Does not the same principle apply, when the first mortgage is only paid in part? and may he not properly ask for an account of the amount due on the first mortgage, and that he may apply the residue of the proceeds of the property to the payment of his own debt? This is one object of the bill; to ascertain the actual amount of Webster's encumbrance; and herein it seems to us the complainant has equity in his case.

It is true the bill has a wider scope. It seeks to have Webster satisfy his debt out of the property he has subject to lien, and on which the complainant has no lien, if such be sufficient for that purpose, so that he may have the more, or the whole of that which is subject to his lien.

JUNE TERM,
1853.

Coss
vs.
Lester and
Webster.

It is a well established principle in equity, that where one has a mortgage upon two funds, and another has a subsequent mortgage upon one of the funds and not on the other, the latter may apply to a court of equity to have the fund upon which he has no lien applied, as far as it will go, in satisfaction of the first mortgage, to the end that his sole fund may, if possible, be left clear to him. *Story's Equity Jurisprudence, secs.* 499, 558, 559, 560, 633.

This is called "marshalling assets" in regard to estates in the course of administration, or marshalling securities, in other cases, and the justice of the principle will suggest itself at once to the conscience of every one. Were it not so, the creditor having the lien upon two funds, might so capriciously or maliciously use his power over the estate as to deprive him who had a lien upon only one of the funds, of his security altogether, which would be unconscionable. "*Nemo ex alterius detrimento fieri debet locupletior.*" Though this case may not technically fall within the rule applicable to marshalling assets or securities, yet the principle is by no means confined to those cases, but is applied to a vast variety of other cases, and to cases of double securities generally. *Lanoy vs. Duke of Athol*, 2 *Atk.* 446; *Aldrich vs. Cooper*, 8 *Vesey*, 388–395; *Rumbold vs. Rumbold*, 3 *Vesey*, 64; *Trimmer vs. Bayne*, 9 *Vesey*, 210, 211; *Story's Eq. Jur. sec.* 559, and authorities there cited; *id., secs.* 363–642; *Attorney General vs. Tyndull*, *Ambl.* 614; *Forrester vs. Lord Leigh, Ambl.* 171; 15 *Ves.* 339.

It seems that this case falls within the principle established by all these authorities, taking the statements of the bill as true. One of the funds or estates

is indeed personal, and the other real. But does that June Term, 1853.
alter the principle or prevent its application? Are
not the equities of the parties substantially the same?
The language of Lord Eldon, in the case of *Aldrich*
*vs. Cooper*, 8 *Vesey*, 388, intimates strongly an affirm-
ative answer to these questions. He says: "suppose
there was no freehold estate, but there was a copyhold
estate, which the owner had subjected to a mortgage,
and died. It is clear the mortgagee, having two
funds, might, if he pleased, resort to the copyhold
estate. But would this court compel him to resort to
it? If so, the court marshals by the necessary con-
sequence of its act. If the court would not compel
him, is it not clear, that it is purely matter of his will,
whether the simple contract creditors shall be paid
or not? That, at least, contradicts all the authorities,
that if a party has two funds, (not applying now to
assets particularly,) a person having an interest in one
only, has a right in equity to compel the former to
resort to the other, if that is necessary for the satis-
faction of both. I never understood, that if A. has
two mortgages, and B. one, the right of B. to throw
A. upon the security which B. cannot touch, depends
upon the circumstance whether it is a freehold or a
copyhold mortgage." This same principle is also
brought in aid of heirs, legatees, and devisees, in ref-
erence to mortgages upon the real estate. *Lutkins vs.
Leigh, Cas. Temp. Talb.* 53, and many other cases
might be cited; *Sagitary vs. Hyde*, 1 *Vern.* 455 ; 1
*John. Ch. R.* 407 ; *Note to Hamilton vs. Warley*, 2 *V.*
62. Besides, here has been, or ought to have been, as
we have before remarked, an application of the pro-
ceeds of personal estate, received by Webster, which
would go far towards extinguishing the mortgage of
Lester to him.

Goss
vs.
Lester and
Webster.

Upon the whole, without undertaking to settle fully the equities between the parties, in this stage of the case, we think the complainant has merits in his bill, and the defendant ought to answer. If Webster has been, in fact, fully satisfied of his mortgage debt, the complainant has the right to have the mortgage cancelled, and to foreclose, and sell the property to satisfy his mortgage. If Webster has been only in part paid, the security is *pro tanto* enhanced to the complainant, and he is entitled to an account.

The decree of the Circuit Court must be reversed.