Scott and another vs. Webster, imp.

## Scott and another vs. Webster, imp.

EQUITY: FORECLOSURE: MERGER. *(1) Merger of equitable and legal estates. (2) Marshaling securities. (3) Liability to account for rents, etc.* REVERSAL OF JUDGMENT. *(4) Errors must be injurious to appellant.*

1. There being two outstanding mortgages of certain land, X. and Y., partners, bought, with partnership funds, one-half of the senior mortgage interest, and the entire legal estate in the land, taking the former in the name of X., and the latter in the name of Y. In a contest between the holders of the first mortgage and the junior mortgagee: *Held*, that there was *no merger* of the legal and equitable estates so purchased; there being an intervening estate by the second mortgage, the taking of the purchased estates in different names showing an intention to keep them distinct, and the transaction not being injurious to the junior mortgagee.
2. The original senior mortgagee also holds the legal title to other lands, and some chattels, as security for the mortgage debt and for the payment of an account against the mortgagors. In this action to foreclose the first mortgage, the junior mortgagee did not allege these facts, nor ask, by way of counterclaim, that an account be taken to ascertain the amount

of such collaterals applicable to the payment of the mortgage in suit, and that such application be made before sale of the lands included in both mortgages. *Held*, that the judgment is not erroneous for failing to grant such relief.

3. X. and Y., being entitled to possession of the mortgaged premises as purchasers, cannot in this action be held to account for such possession.

4. Certain alleged errors in the form of the judgment, not being injurious to the junior mortgagee, will not reverse the judgment on his appeal, whatever might be their effect upon appeal of the mortgagors.

APPEAL from the Circuit Court for *Wood* County.

The case is thus stated by Mr. Justice COLE, in his opinion as originally prepared: "This action is brought to foreclose a mortgage given by Girard and Drake and their 'wives to the plaintiff *Scott*, to secure the payment of seven promissory notes. The mortgage was dated March 24, 1875, and but part of the mortgage debt was due when the action was commenced. On the same day, Girard and Drake mortgaged to the defendant *Webster* a part of the premises embraced in the *Scott* mortgage; and the *Webster* mortgage, by its terms, was made subject to the *Scott* mortgage. Nothing was due on the *Webster* mortgage when the suit was instituted. Previous to the commencement of this action, to wit, on the 15th day of January, 1877, the plaintiff *Scott* sold, assigned and conveyed to his co-plaintiff, *Wm. G. Whorton*, an undivided one-half of the notes and mortgage held by him. At the same time, the defendant *John H. Whorton* purchased of the defendants Girard and Drake the lands embraced in the *Scott* mortgage, together with other lands, and some personal property, paying therefor $5,000, and taking a deed with a covenant against incumbrances, but excepting from the covenant the *Scott* and *Webster* mortgages. *Wm. G.* and *John H. Whorton* were partners at the time these transactions occurred; and it is a conceded fact, that the consideration, both for the lands purchased by *John H.* of the mortgagors and for the undivided half of the *Scott* mortgage, was paid out of the joint means of the partnership, and that the lands and mortgage were purchased

for their joint interest and benefit. The plaintiff *Scott* also holds some 3,000 acres of timber land in Chippewa county, which are not included in his mortgage, with some drafts and lumber, as security for the mortgage debt and the payment of an account he has against Girard and Drake.

" There are a saw-mill and tenement houses on the premises described in the complaint, and the balance of the property is wild pine lands. Since the purchase on the 15th day of January, 1877, the *Whortons* have been in the actual possession of the premises, running the saw-mill and lumbering on the lands. This action was commenced on the 22d of the same month, and the defendant *Webster* is the only party who answered, or who has appealed from the judgment. These are the leading facts upon which the principal questions of law arise."

Judgment was rendered on the 30th of May, 1877, against Girard and Drake, for the full amount of the debt secured by the mortgage, with interest at ten per cent. to the 18th of that month ($40,279.28), with costs, etc.; and it was further adjudged, that the premises be sold to pay the installments then due the plaintiffs with solicitor's fee (over $16,000), and also to pay the installments thereafter to become due; that that part of the premises which was not included in the *Webster* mortgage, should be first sold, and then, if necessary, that part which was so included; that in case of payment of the amount actually due, with costs, etc., before the day of sale, the proceedings should be stayed; that out of the moneys arising from the sale, after the usual deductions for fees, etc., the amount of principal and interest due on the mortgage on the 18th of May, 1877, with interest thereon at the rate of ten per cent. from the day last mentioned, be paid to the plaintiffs, and the surplus, if any, deposited with the clerk of the court, subject to the further order of the court.

The defendant *Webster* appealed from the judgment.

For the appellant, separate briefs were filed by *Gabe Bouck*

and *Charles W. Felker*, and the cause was argued orally by *Mr. Felker*. They contended, 1. That in equity the *Whortons* would be considered as having acquired jointly a half interest in the mortgage in suit, and a half interest in the legal title to the land; that in law their mortgage interest clearly merged in their legal title (2 Black. Com., 177; *Jackson v. Tift*, 15 Ga., 557; *Decker v. Hall*, 1 Edm. Sel. Cas., 279; *Taylor v. Stockdale*, 3 McCord, 302); and that, while a court of equity has power to keep the mortgage interest alive for the purposes of justice (*James v. Johnson*, 6 Johns. Ch., 417; *Starr v. Ellis*, id., 395; *Campbell v. Knights*, 24 Me., 332; *Bassett v. Mason*, 18 Conn., 136), no reason had been shown for exercising that power in this case. It does not appear that it was understood between the *Whortons* and the mortgagors that the latter were to pay the notes secured by the two mortgages. Suppose *Scott* and the *Whortons*, instead of foreclosing, had sued the mortgagors upon the notes: could a judgment be recovered against them for the *Whortons'* interest? *Speer v. Whitfield*, 10 N. J. Eq., 107; *Lilly v. Palmer*, 51 Ill., 331. If not, how can the *Whortons'* interest in the first mortgage be good against the *Webster* mortgage, since, if *Webster* cannot make his debt out of the land, the mortgagors will be compelled to pay it? If the *Whortons* had purchased the *Webster* mortgage and notes, could they maintain a suit against the mortgagors upon those notes? Where land is purchased subject to an incumbrance, an assignment of the incumbrance to the purchaser is a satisfaction thereof to the extent of the value of the land. If the purchaser of the land buys an interest in the incumbrance, it is extinguished *pro tanto*. *Aldrich v. Cooper*, 2 L. C. in Eq., Pt. I, 283–4; *Tice v. Annin*, 2 Johns. Ch., 128; *Jumel v. Jumel*, 7 Paige, 591; *Cox v. Wheeler*, id., 248; *Ferris v. Crawford*, 2 Denio, 595; *Stevenson v. Black*, Saxton, 338; *Klapworth v. Dressler*, 2 Beasley, 62; *Atherton v. Toney*, 43 Ind., 213; *Shuler v. Hardin*, 25 id., 386; *Stoddard v. Rotton*, 5 Bosw., 378. In such

a case, the land is the primary fund for the payment of the mortgage; and here the land was taken by warranty deed subject to both mortgages. *Lilly v. Palmer, supra; Harris v. Jex*, 66 Barb., 232; *Dorr v. Peters*, 3 Edw., 132; *Brewer v. Staples*, 3 Sandf. Ch., 579. Those claiming under the vendor are entitled to the same rights as the vendor himself. 2 Lead. Cas. in Eq., *ubi supra; Eddy v. Traver*, 6 Paige, 521; *Morris v. Oakford*, 9 Barr, 498. The evidence here does not show that the *Whortons* ever paid for the land any consideration aside from the assumption of the mortgages as a charge upon the land. It may be that where the relation of mortgagor and mortgagee exists before the purchase of the legal estate, and the mortgagee purchases in good faith to protect himself or better his security, equity will protect him against intervening estates (*Webb v. Meloy*, 32 Wis., 319); but in this case the purchase of the legal estate and that of the mortgage interest were contemporaneous, and were but one transaction. 2. That since the *Whortons* could keep their mortgage interest alive only by appealing to a court of equity, the rule that he who seeks equity must do equity, is applicable to them; and that, before becoming entitled to relief in this action, they must render an account of the value of their use and enjoyment of the property, which value *Webster* is entitled to have applied upon their interest in the mortgage debt. In this connection counsel insisted that the failure of the mortgagors to appeal from a grossly erroneous personal judgment against them indicated a conspiracy to defraud *Webster*, and should prompt a close examination of the facts in the case; and that the *Whortons* should be required to show affirmatively that payment by them of the mortgages was no part of the consideration of their purchase of the premises. 3. That a court of equity will marshal assets, even though the right is not raised by the pleadings. *Gibbs v. Ougier*, 12 Ves., 413. The court should have decreed that the Chippewa lands, and the personal property held by *Scott* as security for his mortgage, should be sold

before the land included in the *Webster* mortgage. *Aldrich v. Cooper, supra*, pp. 255 et seq.; *Goss v. Lester*, 1 Wis., 51; *Lloyd v. Galbraith*, 32 Pa. St., 103; *Warren v. Warren*, 30 Vt., 530; 2 Story's Eq. Jur., § 633; 4 U. S. Dig. (N. S.), p. 447, subd. 551. 4. That the *Whortons*, owning the fee of the land, could not maintain an ordinary suit for foreclosure and sale. If they were entitled to keep their mortgage interest alive, and desired to free their land from the *Webster* mortgage, their remedy would be by an action to quiet the title or remove the cloud; and the judgment would be, that they be allowed to pay the *Webster* mortgage, or that *Webster*, by a day certain, should redeem their mortgage or stand barred. *Beach v. Cooke*, 28 N. Y., 508; *Waller v. Harris*, 7 Paige, 178; *Dunham v. Jackson*, 6 Wend., 22; *Sherwood v. Hooker*, 1 Barb. Ch., 650. In foreclosure of a land contract, judgment for a sale is error, because the title did not pass by the contract, but remains in the vendor. *Button v. Schroyer*, 5 Wis., 598; *Baker v. Beach*, 15 id., 99. So a mortgagee who subsequently purchases the land, cannot have a foreclosure sale, because the title is already in him. If *Scott* desired to enforce his interest in the mortgage, he should have brought suit alone to foreclose it, making both the *Whortons* defendants; in which case, if the latter were entitled to keep their mortgage interest alive, the court could have rendered a judgment protecting all parties. 5. That the court erred in requiring payment of interest at ten per cent. after May 18, upon the amount of the installments due with interest computed thereon to that date, the finding and judgment being dated May 30. This was an unauthorized compounding of interest, and was error. *Mobray v. Leckie*, 42 Md., 474. 6. That the court erred in rendering personal judgment against the mortgagors, and in providing for execution for any deficiency. *Tormey v. Gerhart*, 41 Wis., 54.

*Mr. Felker* further argued, 1. That the doctrine that merger will not take place where one of the interests is in a trus-

tee, is inapplicable here, because there is nothing to show that either of the *Whortons*, or which of them, was the trustee, or was intended to be. 2. That the doctrine that a merger will be prevented by an intervening estate is true at law, but equity will hold a different rule when necessary to justice (*Forbes v. Moffatt*, 18 Ves., 389; *Starr v. Ellis*, 6 Johns. Ch., 393; *Hill v. Smith*, 2 McLean, 446; *Goulding v. Bunster*, 9 Wis., 573); and that the intervening mortgage estate is of no importance, where it appears that the purchaser took subject to it. 3. That the object of the transaction was plainly to wipe out the *Webster* mortgage; and that this could not be done effectually by the prior mortgagee without purchasing the land, because he could not take possession, run the mill, cut timber and deal with the property as owner in fee, without being liable to account, and this would enhance the value of the *Webster* mortgage; and that, such being the object, equity should not aid it by keeping the mortgage interest alive.

For the respondents, a brief was filed signed by *Webb & Cochrane* as their attorneys, with *Geo. II. Myers*, of counsel, and the cause was argued orally by *Mr. Myers* and *P. L. Spooner*. They contended, 1. That it was the plain intention and interest of the *Whortons* not to have the mortgage interest acquired by *Wm. G.* merge in the legal estate conveyed to *John H.*, and that equity would give effect to their intention (1 Washb. R. P., 186, 612; *Hutchins v. Carleton*, 19 N. H., 487; *Waugh v. Riley*, 8 Met., 290; *Loud v. Lane*, id., 517; *Gibson v. Crehore*, 3 Pick., 475; *Eaton v. Simonds*, 14 id., 98; *James v. Morey*, 2 Cow., 246; *Loomer v. Wheelwright*, 3 Sandf. Ch., 157; *Gardner v. Astor*, 3 Johns. Ch., 53; *Champney v. Coope*, 32 N. Y., 543; *Bascom v. Smith*, 34 id., 320; *Richards v. Ayres*, 1 W. & S., 485; *Moore v. Harrisburg Bank*, 8 Watts, 138; *Cook v. Brightly*, 46 Pa. St., 439; *Campbell v. Carter*, 14 Ill., 286; *Jarvis v. Frink*, id., 396; *Knowles v. Lawton*, 18 Ga., 476; *Morgan v. Hammett*, 34 Wis., 512; *Aiken v. Railway Co.*, 37 id., 469); that merger is not favored

in law or equity *(Simonton v. Gray,.*34 Me., 50), and will not be allowed except for special reasons, and to prevent failure of the intention of the party holding the estate *(Sheldon v. Edwards,* 35 N. Y., 279); that if justice requires it, no merger will be held to have occurred *(Earle v. Washburn,* 7 Allen, 95); and that if one in whom a legal and equitable estate unite, has an interest not to have them merge, they will be held in equity not to do so.   2 Co. Litt., 562, note k; *Lockwood v. Sturdevant,* 6 Conn., 373; *Doton v. Russell,* 17 id., 146; *Clift v. White,* 15 Barb., 70; *Malloney v. Horan,* 49 N. Y., 111; *Wilcox v. Davis,* 4 Minn., 197.   2. That merger only arises when two interests unite in the same person, in the same right, at the same time *(Pratt v. Bank,* 10 Vt., 293; *Sherman v. Abbott,* 18 Pick., 448), and will be prevented by taking one interest in a trustee.   *Bailey v. Richardson,* 15 Eng. L. & E., 218.   3. That the intervening mortgage estate in *Webster* will prevent a merger.   2 Washb. R. P., 180, 181; *Evans v. Kimball,* 1 Allen, 240; *Johnson v. Johnson,* 7 id., 196; *Grover v. Thatcher,* 4 Gray, 526; *Savage v. Hall,* 12 id., 363; *McKinstry v. Mervin,* 3 Johns. Ch., 466; *Millspaugh v. McBride,* 7 Paige, 509; *Dutton v. Ives,* 5 Mich., 515; *Cooper v. Bigly,* 13 id., 463.

COLE, J.   I. The first question to be considered is as to the legal effect of the purchase by the *Whortons* of one-half of the *Scott* mortgage, and at the same time the purchase of the equity of redemption of the mortgaged property, it being conceded that these purchases were made out of the funds of the partnership, and for the benefit of the firm.   It is claimed by the learned counsel for *Webster,* that the purchase of one-half of the *Scott* mortgage in the name of *W. G. Whorton,* and of the equity of redemption in the name of *John H. Whorton,* under the circumstances, operated, by way of merger, to satisfy and extinguish one-half of the *Scott* mortgage debt transferred to *W. G. Whorton,* so as to leave the mortgaged prem-

ises subject only to that half of the first mortgage debt which still belongs to *Scott*, and to the *Webster* mortgage. We fail to see how any such consequence can possibly follow on the facts in the case. For, without going into any discussion of the doctrine of merger, it seems to us plain that there was no merger here: *first*, because the interest in the *Scott* mortgage was assigned and transferred to *W. G. Whorton*, while the equity of redemption was conveyed to *J. H. Whorton;* and *secondly*, because of the intervening *Webster* mortgage. The general rule, as stated by the authorities, is, that a merger takes place whenever a legal and equitable estate in the same land come to one person, in the same right, without an intervening interest outstanding in a third person. Then, it is said, the equitable merges in the legal estate, the latter alone subsisting. See authorities cited on the briefs of counsel on both sides. But here there was in fact no conveyance by the mortgagors to the mortgagee, and there was a junior incumbrance on the estate outstanding in favor of *Webster*. But it is insisted that in equity the *Whortons* should be treated as joint owners of the half interest in the *Scott* mortgage, and joint owners of the equity of redemption, and should not be permitted by any device to avoid rules of law or evade the ends of justice. A court of equity, it is said, will keep an incumbrance alive, or consider it extinguished, as will best serve the purposes of justice and the actual and just intent of the party. If we apply these principles to the facts, we see no ground for holding that there was such a merger as to extinguish one-half of the *Scott* mortgage, or that the rights of *Webster* were injuriously affected by what was done. His mortgage was expressly declared to be subject to the *Scott* mortgage, and he has the same security for the payment of his debt he originally had. Why should he now stand in any better position than he would if *Scott* had retained the entire mortgage debt? Or why ask that the *Whortons* should pay one-half of that mortgage to make good his

security, if it is inadequate? Certainly no promise on the part of the *Whortons*, or either of them, to pay the mortgages, can be presumed, unless it is implied from the circumstance that *John H.* purchased the equity of redemption with the means of the partnership, and for the benefit of the firm. But will the law imply a personal liability to pay from these facts alone? It appears to us not. Of course the land conveyed is charged with the incumbrances, and will be applied to satisfy them. But, in the absence of a special agreement to assume ·the mortgage, we do not understand that the purchaser of the equity of redemption becomes personally liable to pay it. He may give up the property in satisfaction of the liens upon it. It is said, however, that the consideration paid for the equity of redemption was merely nominal. Concede this to be so, and how does that fact enlarge the rights of *Webster?* The property may not be worth the amount of the incumbrances upon it. Moreover, that it was the intention of the *Whortons* to keep the entire *Scott* mortgage alive, is plainly inferable from the way the purchases were made. The equity of redemption was conveyed to one, while the interest in the mortgage was assigned to the other. This method of making the transfers renders the presumption almost irresistible, that the *Whortons* did not intend there should be any merger. The legal and equitable estate were designedly kept distinct, and did not unite in the same person. This was doubtless done for the purpose of keeping the entire *Scott* mortgage alive as a subsisting security.

But it was further insisted, that the plain object which the *Whortons* had in view by the purchase of an interest in the mortgage and the purchase of the equity of redemption, was to injure *Webster;* or, in the language of the learned counsel, it was "intended to wipe out his mortgage, or render his security as valueless as possible." But, as already observed, we fail to see how his rights were or could have been prejudiced by what was done. The property was charged with the pay-

ment of the *Scott* mortgage when he took his. It remains so still. He originally had the right to redeem from that mortgage. That right still remains unimpaired. True, it might be greatly to his advantage to have one-half of the *Scott* mortgage discharged, but, under the circumstances, we see no ground for holding that the *Whortons* assumed the payment of ·it, or that it became extinguished *pro tanto* by the purchases. By the transfer from *Scott*, one-half of the mortgage debt was assigned, and the mortgaged property, as between these parties, is chargeable with the payment of that entire incumbrance. *Webb v. Meloy*, 32 Wis., 319.

II. It appears that there were lands covered by the *Scott* mortgage which were not included in the *Webster* mortgage. The court ordered that these should be first sold to satisfy the amount due on the first mortgage. It also appeared from the testimony of the plaintiff *Scott*, that he held a quantity of lands in Chippewa county, with some drafts and lumber, as collateral security for the payment of the mortgage and an account against the mortgagors. Under the rule of marshaling securities, it is claimed that the court should have further decreed that the Chippewa lands and other property be first appropriated to pay the mortgage debt. It is the aim of a court of equity, as regards marshaling assets, to do equity; and equality is generally equity. Says Chief Justice MARSHALL: "The principle on which the court proceeds is, that a creditor having his choice of two funds ought to exercise his right of election in such a manner as not to injure other creditors who can resort to only one of these funds." *Alston v. Munford*, 1 Brock., 279. This principle has often been applied in this court, as between creditors. *Goss v. Lester*, 1 Wis., 43; *Worth v. Hill*, 14 id., 559, and cases cited in head note in V. & B.'s ed. The difficulty, however, in enforcing that principle here is, that there is no foundation laid for any such relief in the answer of *Webster*. Had he amended his answer, on the trial even, asking, by way of counterclaim or cross bill, that an ac-

count be taken to ascertain the amount of collaterals held by *Scott*, which was applicable to the payment of the first mortgage, and that this amount be applied before the lands included in his mortgage were sold, we think that relief might possibly have been granted. But, without expressing any positive opinion on the point, we are clear that, as the pleadings now stand, the court would not have been justified in marshaling the securities as is claimed should have been done. For *Scott* testified that the title of the Chippewa lands was in him to sell and apply on the notes; but the nature or conditions of that trust nowhere appear. Besides, it appears there were dealings between *Scott*, and Girard and Drake, which would necessarily have to be investigated and settled before any mashaling of assets could take place. It seems that *Scott* had taken lumber and drafts, which he still held as collaterals. And, as all these transactions between these parties would have to be adjusted before it could be known how much, if anything, remained to be applied on the *Scott* mortgage, some foundation for the intervention of the court to investigate them should have been laid in the answer. It is a sufficient answer, that *Webster* demanded no such relief or aid of the court in marshaling the securities, and was, therefore, not entitled to a judgment that the lumber and Chippewa lands should be sold and first applied in payment of the *Scott* mortgage.

III. It is further said that the *Whortons* were in possession, and should have accounted for the use and occupation of the premises. It will be seen that they became the owners of one-half of the *Scott* mortgage, and of the equity of redemption, only seven days before this suit was commenced. As owners of the equity of redemption, they were entitled to the possession. We do not think any accounting was necessary or should have been had.

IV. A variety of objections are taken to the form of the judgment. Whether any of these objections would work a

reversal of the judgment on the appeal of the mortgagors, we will not decide. It is sufficient to say that there is none for which the judgment should be reversed on the appeal of the second mortgagee.

*By the Court.* — Judgment affirmed.

RYAN, C. J., and LYON, J., took no part.

A motion for a rehearing was denied.