# CASES DETERMINED

## *January Term, 1880.*

Scott and another vs. Webster, imp.

*June 2 — June 23, 1880.*

Waste. *(1–4) Persons holding land both as mortgagees and as grantees of the mortgagor, held liable for waste to second mortgagee.*
Injunction. *(5) Who bound by injunction.*

1. Two mortgages of the same land were made at the same time to X. and Y., respectively; but that to Y. was expressly declared therein to be subject to the other. A. and B. purchased an undivided half of the X. mortgage, and had such half assigned to A., and afterwards purchased the equity of redemption, and had the conveyance made to B., and thereupon they went into possession of the premises; and in this action by X. and A. to foreclose the X. mortgage, brought when only part of the mortgage debt was due, to which B. and Y. were made defendants, it was held that the title of A. and B. under the X. mortgage did not merge in their title by the subsequent deed from the mortgagors, and that they were not bound in such action to account for the use and occupation of the premises. 44 Wis., 185. The remainder of the mortgage debt having become due, and X. and A. having asked for an order of sale of the premises to satisfy it, Y. alleges that since the judgment of foreclosure A. and B. have cut from the premises a large amount of pine timber of great value, and which constituted the chief value of the lands, and that, in consequence of such waste, the premises will not now sell for a sufficient sum to pay the X. mortgage, and that the mortgagors are insolvent. *Held*, that A. and B. must account herein.

2. The X. mortgage stipulates that the mortgagors may cut from the premises pine timber not to exceed three millions of feet per year, but that such right shall cease upon default in any of the payments, and upon notice to quit. There is a like stipulation in the Y. mortgage, but with

a condition that one thousand feet of pine timber shall be kept standing on certain of the lands for every dollar of the mortgage moneys remaining unpaid. *Held*, that the obvious design of these stipulations is to enable the mortgagors to pay the mortgage debts without destroying or impairing the security; that the waste complained of cannot be justified by these stipulations; and that A. and B., whether as owners of the equity of redemption or as mortgagees in possession, are not entitled to impair the security of the second mortgage, beyond what is necessary to satisfy their own mortgage.

3. Whether the right of the mortgagors to cut timber, stipulated in the mortgages, was not a *personal* right, which would not pass to the purchasers of the equity of redemption, is not here considered.

4. The fact that A. is plaintiff while B. is made defendant in the action, has no influence upon their rights here in question.

5. Both A. and B. were also substantially bound by an injunction heretofore granted in this action restraining the defendants from committing waste on the premises, and would have been so even if their rights in the property had really been antagonistic.

APPEAL from the Circuit Court for *Wood* County.

Foreclosure of a mortgage. *Thomas B. Scott* and *Wm. G. Whorton* were plaintiffs, and *H. W. Webster* and *John H. Whorton* defendants. A judgment of foreclosure was affirmed by this court on appeal therefrom. See 44 Wis., 185–197. The present appeal was taken by *Webster* from so much of an order of the court, subsequently made, as directed a sale of the mortgaged premises for the whole of the judgment, and denied said appellant's motion that the *Whortons* be required to account for the timber cut by them on the mortgaged premises since the entry of the judgment.

*Moses Hooper*, for the appellant:

1. The *Whortons* were mortgagees in possession. Being owners of the equity of redemption and also of half of the first mortgage, they were entitled to possession under either right. The court will refer the possession to such right as will do substantial justice. *Rex v. Phillips*, 1 Burr., 301; *Alderson v. Temple*, 4 id., 2239. It will lean toward that right which requires the party in possession to account for profits.

*Brayton v. Jones,* 5 Wis., 117, 123; *Demarest v. Berry,* 16 N. J. Eq., 481; *Moore v. Degraw,* 5 id. (1 Halst.), 346; *Ten Eyck v. Casad,* 15 Iowa, 524; *Anderson v. Lanterman,* 27 Ohio St., 104; *Green v. Dixon,* 9 Wis., 534; *Lupton v. Almy,* 4 id., 242; *Chalabre v. Cortelyou,* 2 Paige, 605; *Hilliard v. Allen,* 4 Cush., 532; *Holabird v. Burr,* 17 Conn., 556. This rule is in analogy to the law of application of payments. *Robinson v. Allison,* 36 Ala., 525; *Milliken v. Tufts,* 31 Me., 497; *Livermore v. Claridge,* 33 id., 428; *Clark v. Mershon,* 2 N. J. L., 70; *Thurlow v. Gilmore,* 40 Me., 378; *Pierce v. Sweet,* 33 Pa. St., 151; *Field v. Holland,* 6 Cranch, 8; *Smith v. Wood,* 1 N. J. Eq., 74; *Pattison v. Hull,* 9 Cow., 747. Since the judgment in this case, the *Whortons* cannot claim to have cut timber as owners of the equity of redemption. As such owners they are defendants, and are also " persons claiming under " the principal defendants. The judgment enjoins the defendants and all persons claiming under them from doing any act to impair the value of the premises. And the *Whortons* will not be heard to say that they have disobeyed this judgment and committed contempt. Broom's Leg. Max., 279; *State v. Clerk,* 25 N. J. L., 209; *Rogers v. Paterson,* 4 Paige, 450; *Johnson v. Pinney,* 1 id., 646; *Hazard v. Durant,* 11 R. I., 195; *Winn v. Albert,* 2 Md. Ch., 42; *Turner v. Gatewood,* 8 B. Mon., 613; *Taylor v. Hopkins,* 40 Ill., 442; *Scott v. Carr,* Riley's Law Cas. (S. C.), 193; *Gant v. Gant,* 10 Humph., 464. A defendant may invoke a judgment protecting him against a co-defendant as freely as if he were a plaintiff. R. S., sec. 2883; *Ogden v. Glidden,* 9 Wis., 49. 2. Suppose the *Whortons* were in possession as owners of the equity of redemption. When they purchased the land subject to both mortgages, they bound themselves to hold it as the primary fund for the payment of the mortgages, even though they did not assume or agree to pay them. *Weber v. Zeimet,* 30 Wis., 283; *Sweetzer v. Jones,* 35 Vt., 317; *Jumel v. Jumel,* 7 Paige, 591; *Hartley v. Harrison,* 24 N. Y., 170;

*Harrison v. Wyse*, 24 Conn., 1; *Webb v. Meloy*, 32 Wis., 319; *Thompson v. Thompson*, 4 Ohio St., 333; *Russell v. Allen*, 10 Paige, 249; *Vanderkemp v. Shelton*, 11 id., 28; *Greither v. Alexander*, 15 Iowa, 470; *Freeman v. Auld*, 44 N. Y., 50. Having converted the mortgaged property itself into cash, they hold the proceeds for the same use *( Webb v. Meloy, supra )*, and must apply such proceeds to the satisfaction of their interest in the first mortgage. As holders of the first mortgage, they are liable to the second mortgagee for all the profits which they permitted themselves to receive as owners of the equity of redemption. *Hitchcock v. Fortier*, 65 Ill., 239; *Chapman v. Tanner*, 1 Vern., 267; *Coppring v. Cooke*, id., 270; *Richardson v. Wallis*, 5 Allen, 78; *Miller v. Lincoln*, 6 Gray, 556. 3. Equity seeks to avoid a multiplicity of suits. *Woodruff v. Fisher*, 17 Barb., 224; *Haggin v. Peck*, 10 B. Mon., 210; *Green v. Creighton*, 23 How., 90; *Garrison v. Ins. Co.*, 19 id., 312. If the *Whortons* are not compelled to account in this suit, then *Webster* must sue the mortgagors; and if he can collect of them, they must, in turn, sue the *Whortons* for the value of the timber cut. If *Webster* cannot collect of the mortgagors, he must sue the *Whortons* for the value of the timber. That the mortgagors are entitled to have the *Whortons* account for the value of the timber cut, and reduce their indebtedness on the mortgages by the amount of such value, is well settled. *Ackerman v. Lyman*, 20 Wis., 455; *Jumel v. Jumel*, 7 Paige, 591; *Vanderkemp v. Shelton*, 11 id., 28; *Freeman v. Auld*, 44 N. Y., 50; *Fleming v. Collins*, 2 Del. Ch., 230. 4. The mortgagee in possession must account for rents and profits in favor of the second mortgagee, as well as in favor of the owner. *Webb v. Meloy*, 32 Wis., 319; *Moore v. Degraw*, 1 Halst., 346; *Van Buren v. Olmstead*, 5 Paige, 9; *Ten Eyck v. Casad*, 15 Iowa, 524; *Hitchcock v. Fortier*, 65 Ill., 239; *Anderson v. Lanterman*, 27 Ohio St., 104; *Harrison v. Wyse*, 24 Conn., 1. And especially for such use of the premises as takes the very property

itself. *Guthrie v. Kahle*, 46 Pa. St., 331; *Givens v. M'Calmont*, 4 Watts, 460; *Irwin v. Davidson*, 3 Ired. (N. C. Eq.), 311; *Onderdonk v. Grey*, 19 N. J. Eq., 65.   5. The fact that the timber was cut after judgment, during the time allowed for redemption, does not defeat *Webster's* claim to have an account of the profits, and an application thereof to the reduction of the judgment.   *Chapman v. Smith*, 9 Vt., 153; *Ruckman v. Astor*, 9 Paige, 518; *Ten Eyck v. Casad*, 15 Iowa, 524; *Hill v. Hewett*, 35 Iowa, 563.   6. It is not necessary that mortgagee in possession should receive rents from another, to render him liable to account.   *Green v. Dixon*, 9 Wis., 534; *Green v. Wescott*, 13 id., 606; *Ackerman v. Lyman*, 20 id., 455; *Moore v. Degraw*, 1 Halst., 346; *Van Buren v. Olmstead*, 5 Paige, 9; *Vanderkemp v. Shelton*, 11 id., 28, 40.

For the respondent there was a brief by *Webb & Cochran* and *Geo. R. Gardner*, and oral argument by *Mr. Gardner:*

1. The timber was cut by the *Whortons* as owners. As mortgagees they had no right of possession, and only obtained such possession by purchase of the equity of redemption. *Wood v. Trask*, 7 Wis., 566.   2. On the trial and upon the former appeal it was held that, as owners of the equity of redemption, they were entitled to the possession, and that no accounting should be had.   44 Wis., 196; *Du Pont v. Davis*, 35 id., 638.   3. They were entitled, as owners, to the use and profits of the mortgaged premises until after foreclosure and sale, even though the premises were inadequate security for the debt.   *Fitchburg Cott. Manufactory Corp. v. Melven*, 15 Mass., 268; *Clarke v. Curtis*, 1 Gratt., 289; *Hughes v. Edwards*, 9 Wheat., 489; *M. V. & W. R'y Co. v. U. S. Exp. Co.*, 81 Ill., 534.   4. Even if it were true that, by cutting the timber as owners of the equity of redemption, the *Whortons* would disobey the judgment, it does not follow that they cut it as mortgagees.   But the judgment was, in this respect, for the protection of the plaintiffs only.   Nothing was due on the mortgage to *Webster*.   5. The *Whortons*, as owners, succeeded

to all the rights of the mortgagors, including the right reserved in the first mortgage to cut timber not exceeding three millions per year, and the right reserved in the second mortgage to cut timber provided one thousand feet were left standing for every dollar unpaid. These reservations were reasonable, and the rights will be protected. The timber cut in the exercise of such rights belongs to the *Whortons* as grantees of the mortgagors. *Smith v. Moore*, 11 N. H., 55. There is no allegation that the limits of these rights have been transgressed. 6. Nothing being due on the second mortgage until more than a year after the judgment, such judgment could not have affected the agreement and reservation contained in that mortgage, nor, as between *Webster* and the *Whortons*, have forbidden the cutting of timber under such agreement. *Webster* could not have maintained an action to enjoin the cutting under that agreement. How, then, can he obtain, in this action on the first mortgage, relief to which he would not be entitled in an action on his own mortgage? 7. That *Webster* will lose his debt unless the *Whortons* are compelled to account, is no ground for holding them to such account. The security, without the wrongful act of any one, has proved insufficient to pay his mortgage. But there is no promise, express or implied, on the part of the *Whortons*, to pay it. 44 Wis., 193. 8. As the *Whortons* owned only an undivided one-half of the first mortgage, and the whole of the equity of redemption in the lands, their possession does not constitute them mortgagees in possession. *Davenport v. Turpin*, 41 Cal., 100. 9. No accounting can be had in this proceeding. The answer does not ask for any such relief. The affidavits fail to show when the timber was cut. If cut before anything was due on the second mortgage, no accounting could, in any view of the case, be had. It is not shown that the cutting was done on the premises covered by the second mortgage. Plaintiff *Scott* cannot be compelled to await the settlement of equities between *Webster* and the

*Whortons* before he is allowed to collect his part of the judgment.

In reply, *Mr. Hooper* argued, that the provision in the first mortgage that the mortgagors may cut not to exceed three millions per year, must be construed with the provision that they shall pay $5,000 and interest per year in reduction of the mortgage. The two provisions go hand in hand, the one reducing the debt as fast as the other reduced the security. *Gillum v. Dennis*, 4 Ind., 416; *Grant v. Johnson*, 5 N. Y., 247; *Bean v. Atwater*, 4 Conn., 3; *Brown v. Gammon*, 14 Me., 276; 2 Parsons on Con., 528–9. The provision in the second mortgage that timber may be cut on the lands described therein provided one thousand feet be left for every dollar unpaid, relates to the fund to be preserved to pay *Webster* alone, and does not affect his right to protect the fund pledged to pay the prior mortgage. Both mortgages are to be construed together, and the second is protected by the provisions of the first, since they must both be paid from the same fund. *Rorabacher v. Lee*, 16 Mich., 169; *Hunt v. Livermore*, 5 Pick., 395; *Adams v. Hill*, 16 Me., 215. It is immaterial whether the cutting was or was not on the land covered by the second mortgage. When one party has a first lien on two funds for his security, and another has a second lien on only one, the second lienor has the right to have the fund on which he has no lien, applied to the reduction of the first claim. *Dewster v. McCamus*, 14 Wis., 307; *Straight v. Harris*, id., 509; *Scheyvers v. Teller*, 9 Paige, 173, *Wise v. Shepherd*, 13 Ill., 41; *Ingalls v. Morgan*, 10 N. Y., 178; *Applegate v. Mason*, 13 Ind., 75; *Sibley v. Baker*, 23 Mich., 312; *Wolf v. Smith*, 36 Iowa, 454. Nor is it material that the second mortgage was not due at the date of the judgment. It is as necessary to protect a fund for the payment of a mortgage to become due as of a mortgage past due. The right to an accounting depends on the situation at the time of hearing. Half of the second mortgage was then due.

ORTON, J.   Drake and Girard, the owners of the lands, made a mortgage to *Thomas B. Scott*, and at the same time another mortgage, on part of the same lands, to *Hiram W. Webster*, subject to the first.   *William G.* and *John H. Whorton* purchased of *Scott* one undivided half of his mortgage, and the moneys secured thereby, and had such interest in the mortgage assigned nominally to *William G. Whorton;* and they afterwards purchased the lands described in the *Scott* mortgage of Drake and Girard, and the deed for the same was executed nominally to *John H. Whorton*, and the *Whortons* thereupon went into the possession of the premises. Part of the moneys secured thereby being due, *Scott* and *William G. Whorton* brought suit to foreclose the first mortgage against Drake & Girard, *John H. Whorton, Hiram W. Webster*, and others; and *Webster* answered that the purchase of the equity of redemption of the mortgaged premises by the *Whortons* merged and discharged their half of the mortgage; and on appeal to this court it was held, in *Scott v. Webster*, 44 Wis., 185, that such purchase did not have that effect.

In his opinion in that case, Mr. Justice COLE said, " that no accounting by the *Whortons* for the use and occupation of the mortgaged premises was necessary, as they were the owners of the equity of redemption, and entitled to the possession, and became such owners only seven days before the commencement of the suit."   The right of the *Whortons* to commit waste upon the premises, or to use the same in any manner so as to impair their intrinsic value or the security of the *Webster* mortgage, was not involved or considered in that case; and the holding in that case cannot, by any fair construction, affect the question now before this court.   All of the mortgage moneys being now due, *Scott* and *William G. Whorton* now ask, by motion, for an order of sale of the whole premises to satisfy their mortgage.   *Webster*, in opposition to the motion, charges that the *Whortons*, since the rendition of the judgment of foreclosure, have cut from the mortgaged premises a

large amount of pine timber, of great value, and which con-
stituted the chief value of the lands, and that the premises, in
consequence of such waste, will not now sell for a sum suffi-
cient to pay the first mortgage, and that the mortgagors,
Drake and Girard, are insolvent, and asks that the *Whortons*
account for such waste, to be deducted from their part of the
mortgage moneys.

It is stipulated in the *Scott* mortgage that the mortgagors
might cut from the premises pine timber not to exceed 3,000,-
000 feet per year, but that such right should cease upon
default in any of the payments and upon notice to quit.
There is also a similar stipulation in the *Webster* mortgage,
conditional, however, that 1,000 feet of pine timber should be
kept standing upon certain of the lands for every dollar of the
mortgage moneys remaining unpaid. Without passing upon
the question whether this right to cut three millions of pine
timber on the mortgaged premises per year was not strictly a
*personal* right, and not assignable, there can be no question
but that such right was given or reserved to the mortgagors
for reasons *personal* to them. By the first stipulation, the
right to cut timber on the premises was conditional upon
prompt payment of the mortgage moneys, and was to be lost
by default; and by the other, such right was subject to a
proviso that 1,000 feet of the timber should be left standing
on a part of the premises for each dollar of the *Webster* mort-
gage remaining unpaid; which clearly show the intention and
design of the parties, in giving or reserving such right, to
have been to enable or assist the mortgagors, Drake and
Girard, to pay both of the mortgages, and furnish them
means, by the use of the pine timber to that extent, to do so.

It would be gross perversion of the meaning of these stip-
ulations, and defeat their obvious purpose and intent, to con-
strue them to give the mortgagors the right, by cutting off
the timber, to destroy the value of the premises and impair or
destroy the mortgage security of either *Scott* or *Webster*.

The waste here complained of cannot, therefore, be justified by these stipulations.  The claims of the *Whortons* that they had the right to cut off and use the pine timber to the extent complained of, because they were the owners of the equity of redemption and in possession, is equally groundless.   The two mortgages were executed at the same time and in the same transaction, with the same general purpose and design, although the *Webster* mortgage was made subject and subordinate to the *Scott* mortgage; and *Webster*, as the junior mortgagee, has a right to insist upon the perfect good faith and fair dealing of both the mortgagors and the owners of the *Scott* mortgage in respect to the use and care of the mortgaged premises, and that his security therein shall not be impaired by them beyond the necessity of satisfying the prior mortgage.   It is too clear for argument, and well settled by the decisions of this court, that mortgagors, or the owners of the equity of redemption, in possession, have no right in law or equity to commit waste upon the mortgaged premises to the detriment of the mortgage security, and that they are liable to injunction when such injury is threatened.   *Fairbanks v. Cudworth*, 33 Wis., 358.

Treating the *Whortons* as the owners of the equity of redemption in possession, they are guilty of having committed the waste complained of, in gross violation of this just and equitable principle, and should be held accountable therefor, at least to the extent of their mortgage interest.   In one sense, their possession may have been that of the owners of the equity of redemption, by a conveyance from the mortgagors; but that is not, by any means, all there is of it.   By the above decision of this court, they may, notwithstanding such ownership of the legal title, still retain their mortgage relation to the property; and now, after they have thus secured the right to remain as mortgagees as well as owners, and the advantage of keeping alive their mortgage interest, it is quite too late to ignore their mortgage relation and insist that they had the

possession, and have committed the waste, and are to be protected in so doing, as the owners of the equity of redemption in possession, and not to be held liable to account for such waste as mortgagees in possession. They are not to be thus permitted to keep their mortgage interest alive and in preference to the *Webster* mortgage, and at the same time hold the possession only as the owners, or for any other purpose than to obtain their mortgage moneys, and especially not for the purpose of destroying the value of the property by waste, and enjoying its product to the utter destruction of *Webster's* mortgage security, under the pretext and excuse of being the owners of the property.

It did not and could not change their real and true relations to the property, and to their half interest in the *Scott* mortgage, and their legal or equitable rights and liabilities as the joint owners of both, that they, in mere form, severed, and one became a plaintiff, and the other a defendant, in the suit for the foreclosure of the *Scott* mortgage.

They both, substantially, as plaintiffs and mortgagees, obtained the benefit of the judgment of foreclosure in the name of one; and both, substantially, as defendants and owners of the equity of redemption, were bound by the judgment rendered in form against one. The confusion is merely nominal, and their separation for the purposes of the suit of foreclosure was merely fictitious, and their true relations to the property were both as mortgagees and owners, and their possession and use of the mortgaged premises, so far as they affect the claims of the *Webster* mortgage, must be held to have been their possession and use as *mortgagees* in possession. In respect to the *Webster* mortgage, one of two results must follow from their relations to the mortgaged property, and not both. Their mortgage interest must have merged in their legal title, and been discharged, and their possession was that of owners; or their mortgage interest is kept alive, and their possession is that of mortgagees. In the suit of foreclosure they have

chosen the latter relation, and it has been sanctioned by this court, and by it they must abide; and, so far as this proceeding is concerned, they must be dealt with as mortgagees in possession, and held accountable for the waste complained of.

Under the circumstances, to now claim the right to obtain by foreclosure the payment of their mortgage moneys, and also to strip the land of its timber and diminish its value, to the destruction of *Webster's* mortgage security, and use the decision of this court on the former appeal as a pretext and justification of it, is not only an attempted wrong and injustice, but a most unwarrantable attempt to hold this court responsible for their commission. The equity and justice of holding the *Whortons* accountable for the value of the timber cut from the premises by them since the judgment of foreclosure, are so clear and unquestionable, that it may detract from the importance of the case, lower the grounds of the decision, and imply a doubt of a self-evident principle, to state another ground of their liability, equally conclusive, but more technical, and that is, that the waste complained of was committed by them in violation of the injunction which was made a part of the judgment of foreclosure. We have already seen that, in respect to the property, they were both mortgagees and owners, and in respect to the suit of foreclosure they were both plaintiffs and defendants substantially: plaintiffs as mortgagees, and defendants as owners; and, in relation to the injunction, both obtained it, and both are bound by it. *John H. Whorton* was one of the defendants, and of course bound by the injunction; and *William G. Whorton* being alike interested in the subject matter as a joint owner and mortgagee, he is also bound. But even if their rights in the property were antagonistic, and in a suit in respect to it one is plaintiff and the other defendant, and the plaintiff obtain an injunction against the defendant for committing waste upon the premises in controversy, both are substantially bound

by the injunction, and the plaintiff may not disregard its spirit and object. *Haight v. Lucia*, 36 Wis., 355.

In any view which can be properly taken of this case, the *Whortons* should be held to account for the value of the pine timber cut by them, or either of them, from the mortgaged premises since the rendition of the judgment of foreclosure, to the extent of their mortgage interest, and, when ascertained, it should be applied *pro tanto* in satisfaction of their half of the mortgage; and the circuit court erred in granting the motion without such accounting and application of such value, as asked by the appellant *Webster*.

*By the Court.*— That part of the order of the circuit court appealed from is reversed, with costs, and the cause remanded for further proceedings according to this opinion.